IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01700-PAB-KMT

COCHLEAR LTD. and
COCHLEAR BONE ANCHORED SOLUTIONS AB,

    Plaintiffs,

v.

OTICON MEDICAL AB and
OTICON MEDICAL LLC,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion to Enforce Arbitration Agreement and Stay Litigation Pending Resolution of Arbitration [Docket No. 31] and Defendants' Motion to Strike or, in the Alternative, for Leave to File Supplemental Declaration Regarding Principles of Swedish Law [Docket No. 59]. Defendants request that the Court stay and administratively close this case pending resolution of arbitration proceedings between the parties. Docket No. 31 at 12-13. Defendants also request that the Court strike a portion of the supplemental brief regarding Swedish law filed by plaintiffs or that defendants be allowed to supplement their briefing. Docket No. 59 at 4

## I. BACKGROUND

This is a patent dispute. On July 1, 2016, plaintiffs filed their complaint alleging infringement of U.S. Patent Nos. 5,735,790, 7,043,040 (the "'040 patent"), 7,074,222,

and 7,409,070.  Docket No. 1 at 17-18.  On September 13, 2016, plaintiffs filed their amended complaint alleging infringement of only the '040 patent.  Docket No. 9 at 10.  The '040 patent involves a hearing aid that transmits sound "from one side of the head to the cochlea on the other side of the head for rehabilitation of patients with unilateral hearing loss."  Docket No. 1 at 31, '040 patent, Abstract.  Plaintiffs allege that defendants' "promotion, sale, offer for sale, and/or importation of its abutment extender, and the promotion of combination bone anchored hearing systems for single sided deafness, has induced the infringement of one or more claims of the '040 patent literally or under the doctrine of equivalents."  *Id*., ¶ 31.  Plaintiffs claim that defendants have developed and sought U.S. Food and Drug Administration ("FDA") approval for a system by "stating that the use, function and procedure for [defendants'] Ponto [bone anchored hearing] system is substantially equivalent to Cochlear's Baha® Divino device already approved by the FDA."  Docket No. 9 at 5, ¶ 17.  Plaintiffs further allege that defendants have promoted their products for use in a combined system, in which defendants' sound processor and abutment extension is attached to plaintiffs' implant and abutment to form a complete hearing system.  *Id*. at 7, ¶ 22.

Cochlear Limited and William Demant Holding A/S ("WDH"), defendants' parent company, signed a Patent License Agreement (the "Agreement") to license the '040 patent.  Docket No. 32-1; Docket No. 31 at 3.  Defendants claim that, as "Affiliates" of WDH under the agreement, they are licensees of the '040 patent under the Agreement.  Docket No. 31 at 3.  Plaintiffs do not dispute the validity of the Agreement, but they deny that it licenses the actions they accuse of infringement.  Docket No. 41 at 2.

The Agreement contains an arbitration clause, which provides that "[a]ll disputes arising out of or in connection with this Agreement shall be finally settled under the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce (SCC) by three arbitrators appointed in accordance with the said Rules." Docket No. 32-1 at 11, ¶ 13.1. The Agreement also provides that "[a]ny dispute, controversy or claim shall be decided in accordance with the laws of Sweden." *Id*., ¶ 13.4.[1]

Central to the parties' dispute is the interpretation of the license grant contained in Article 2.2 of the Agreement and the limitations on that license:

> Cochlear grants to WDH and its Affiliates a world-wide, non-exclusive, nontransferable, fully paid-up license to make, use, sell, offer for sale or have made for use or sale, only by WDH and its Affiliates, and only under a WDH brand label, products that are covered by one or more of the Licensed Patents, restricted solely to the Field of Use defined in Article 2.1.

Docket No. 32-1 at 4-5, ¶ 2.2.

This license is subject to a field of use limitation under Article 2.1, which limits the licensees to "use in the field ('Field of Use') of Hearing Systems, expressly excluding (by way of example and not limitation) Implantable Bone Conduction Hearing Systems, and in relation to Patent no. 1 and 2, expressly excluding any use that constitutes a breach of Article 2.4." Docket No. 32-1 at 4, ¶ 2.1.[2] In the Agreement's

---

[1] Because the parties' initial briefing did not address how contracts are interpreted under Swedish law, the Court ordered supplemental briefing on "what principles of Swedish law apply to the interpretation of a license agreement and how the Court should apply any such legal principles to determine whether the scope of the dispute falls within the scope of the arbitration agreement." Docket No. 55 at 1.

[2] The Agreement defines "Hearing Systems" as "a Percutaneous Bone Conduction Hearing System or a Non-Implantable Bone Conduction Hearing System." Docket No. 32-1 at 3, ¶ 1.3. These terms are, in turn, defined as "a bone conduction

3

list of licensed patents, the '040 patent is "Patent 3" of six licensed patents.  Docket No. 32-1 at 6, ¶ 3.1.

Article 2.4 states, in part, that to "avoid unauthorized use and avoid encouraging unauthorized use beyond the scope of the grant in this Agreement, WDH and its Affiliates shall: 2.4.1. refrain from advertising, marketing, or promoting, in any written form including electronic, whether in encouraging or discouraging terms, any cross compatibility of WDH implants and abutments or sound processors with Cochlear implants and abutments or sound processors."  Docket No. 32-1 at 5, ¶¶ 2.4, 2.4.1.

On November 30, 2016, WDH filed a request for arbitration with the SCC, wherein it asks for a "declaratory judgment to the effect that the Patent License Agreement authorises [WDH] and its Affiliates to undertake the actions that is now alleged by Cochlear to infringe or induce the infringement of [the '040 patent]."  Docket No. 32-3 at 4, ¶ 3.1(i).  Plaintiffs claim that "WDH's arbitration request is . . . directly contrary to the [Agreement]."  Docket No. 41 at 9.

## II. ANALYSIS

The Federal Arbitration Act evinces "a liberal federal policy favoring arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (citing *Mitsubishi*

---

hearing device and coupling intended to transmit sound vibrations to a percutaneous bone anchored implant by way of an external transducer attached to the implant through a mechanical coupling device" and "a bone conduction hearing device intended to transmit sound vibrations by way of external transducer attached to a head band through a mechanical coupling device," respectively.  *Id*. at 4, ¶¶ 1.10, 1.8.  The excluded "Implantable Bone Conduction Hearing System" is defined as "a wholly or partially implantable bone conduction hearing device intended to transmit sound vibrations to a bone anchored implant, and for the avoidance of doubt excluding a Percutaneous Bone Conduction Hearing System."  *Id*. at 3, ¶ 1.4.

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). But "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Accordingly, a court considering a motion to compel arbitration must initially examine the scope of the parties' arbitration agreement and then determine whether plaintiffs' claims are within that scope. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citing *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Id*. (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). First, "a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224. If the arbitration clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue" that will generally not be arbitrated. *Id*. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id*. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Both parties agree that, under Swedish law, as under American law, contracts are interpreted by using the text of the contract to determine the intent of the parties. Docket No. 56 ("As Messrs. Westerberg and Holm explain, the interpretation of contracts under Swedish law, as under U.S. law, is anchored in the plain meaning of the text because it is the best source of the intent of the parties." (citing Docket No. 56-1 at 4-5, ¶ 8)); Docket No. 57 ("Swedish law also makes clear that the written agreement is the most important document for determining the intention of the parties." (citing Docket No. 57-1 at 4, ¶¶ 11-12)). Further, both parties present evidence that contracts are interpreted as a whole under Swedish law. Docket No. 56-1 at 4, ¶ 8 ("However, when the agreement is unclear, incomplete or where it is disputed that the wording reflects the real intentions of the parties the Court would try to infer an actual or hypothetical common intention, by making a global assessment based on a number of relevant circumstances, such as what occurred during the negotiations, the purpose of the agreement, what would have applied under otherwise applicable non-mandatory law, common practice and terms used in the relevant industry, what can be inferred from or implied by the behavior of the parties (based on e.g. previous agreements or post-signing), and the context of the agreement."); Docket No. 57-1 at 4-5, ¶ 13 ("Another principle of Swedish law is that a contract shall be interpreted as a whole, or as usually expressed in Swedish law, systemically. A provision should be read in the context of other provisions in the contract, so as to make the contract form a coherent

system of rules."). The parties, however, differ on how the Agreement should be interpreted.

Plaintiffs argue that their infringement claims are not subject to arbitration because they relate to patent rights excluded from the license granted in the Agreement. Docket No. 41 at 11. Because the scope of the arbitration clause should mirror the scope of the rights licensed, plaintiffs argue that the Court should determine whether the allegedly infringing products are excluded from the scope of the license grant. *Id*. at 12-13 (citing *Radware, Ltd. v. F5 Networks, Inc.*, 2013 WL 6773799, at *1 (N.D. Cal. Dec. 23, 2013) and *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021 (N.D. Cal. 2015)). In particular, plaintiffs argue that the Agreement does not grant defendants the right to induce infringement of the '040 patent by third parties, but instead limits defendants to only selling WDH branded products and prohibits defendants from promoting combinations of WDH products with plaintiffs' products. Docket No. 41 at 5-6.[3]

Defendants argue that the license grant in the Agreement is broader than plaintiffs argue. In particular, defendants claim that the exclusions in field of use under Article 2.4 do not prevent combinations by third parties in relation to the '040 patent, i.e. Patent 3, because the limitations apply only to Patent Nos. 1 and 2. Docket No. 49 at 2-6.

---

[3] Plaintiffs also argue that the Court should not compel arbitration because defendants have failed to show that they would be bound by the arbitration decision. Docket No. 41 at 14-15. This issue appears to be irrelevant to whether arbitration would be dispositive in this case because the Agreement licenses WDH's affiliates, including defendants. Docket No. 32-1 at 4-5, ¶ 2.2. Plaintiffs do not argue against the proposition that this dispute would be resolved by an arbitration decision that held the license authorizes defendants' actions, and defendants admit that they will be bound by the arbitration decision. Docket No. 49 at 8.

7

### A. The Agreement's Arbitration Clause is Broad

The Agreement does not limit arbitration to any particular articles or exclude any types of claims. Docket No. 32-1 at 11, ¶ 13.1. Rather, the arbitration clause covers all claims "arising out of or in connection with [the] Agreement." *Id*. This language shows the parties' intent that the arbitration clause not be read narrowly. Therefore, applying the first part of the inquiry, the Court finds that the arbitration clause in the Agreement is broad. *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225 ("expansive language will generally suggest a broad arbitration clause"); *see also Cummings*, 404 F.3d at 1262. Because the arbitration clause is broad, the Court will apply a presumption of arbitrability.

### B. Applying the Presumption of Arbitrability

Although plaintiffs claim that their infringement allegations are outside the scope of the license, they also state that "[n]ot only are Oticon's actions unauthorized, but Section 2.4.1 of the License Agreement explicitly prohibits those activities." Docket No. 41 at 6. Defendants argue that the License Agreement authorizes their activities. Docket No. 49 at 3. It is therefore clear that interpretation of the License Agreement is necessary to resolve the dispute. When the language of the arbitration agreement is broad, such interpretative issues are appropriate for arbitration. As noted by the Supreme Court, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the **construction of the contract language** itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (emphasis added); *see also United Steelworkers of Am.*, 363 U.S. at 582-83 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance

8

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The Court finds that the parties' dispute is within the scope of the arbitration clause. Therefore, the Court will enforce the arbitration agreement and administratively close this case pending resolution of the arbitration.[4]

### C. Motion to Strike

Because the Court does not rely on any of the portions of plaintiffs' briefing or exhibits identified in defendants' motion to strike [Docket No. 59], the Court will deny the motion as moot.

## III. CONCLUSION

Accordingly, it is

**ORDERED** that Defendants' Motion to Enforce Arbitration Agreement and Stay Litigation Pending Resolution of Arbitration [Docket No. 31] is **GRANTED** in part and **DENIED** in part. The motion is granted to the extent it seeks to compel plaintiffs to arbitrate the claims that they assert in this action against defendants and requests that this case be administratively closed. The motion is denied to the extent that it requests a stay of this action. It is further

---

[4] In a case involving a written arbitration agreement between the parties that encompasses the disputes at issue in the litigation, section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, instructs courts to stay the action "until such arbitration has been had in accordance with the terms of the agreement." The Tenth Circuit has described administrative closure as being "the practical equivalent of a stay." *Quinn v. CGR,* 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987).

**ORDERED** that Defendants' Motion to Strike or, in the Alternative, for Leave to File Supplemental Declaration Regarding Principles of Swedish Law [Docket No. 59] is **DENIED** as moot. It is further

**ORDERED** that the parties shall proceed to binding arbitration in a manner consistent with the agreement attached to the motion to compel arbitration. It is further

**ORDERED** that this action shall be administratively closed, subject to reopening for good cause, pursuant to D.C.COLO.LCivR 41.2. It is further

**ORDERED** that, not later than twenty days after the completion of the arbitration proceeding, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the case may be dismissed.

DATED September 25, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge